**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

─────────────────────────────────X
LORI DECOSTANZO, on behalf of herself
and all others similarly situated,

                    Plaintiff,

   -against-

GLAXOSMITHKLINE PLC and
GLAXOSMITHKLINE LLC,

                    Defendants
─────────────────────────────────X

**MEMORANDUM & ORDER**
21-CV-4869 (GRB)(AYS)

**GARY R. BROWN, U.S. District Judge:**

       Plaintiff Lori DeCostanzo brings this putative class action on behalf of herself and similarly situated consumers against the British pharmaceutical company GlaxoSmithKline PLC and its wholly-owned US subsidiary GlaxoSmithKline LLC (together, "GSK") claiming that their ad campaign for the whooping cough vaccine Boostrix misled consumers into believing the vaccine would help prevent transmission of the disease to infants when in fact it increases the risk of unwittingly transmitting the disease. Plaintiff brings claims under New York General Business Law ("GBL") §§ 349, 350, state consumer protection statutes, the Magnuson-Moss Warranty Act, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, unjust enrichment, fraud, and negligent misrepresentation. For the reasons set forth below, defendants' motion to dismiss is DENIED except with respect to the unjust enrichment claim.

*Facts*

       Pertussis, commonly known as the whooping cough, is an infectious respiratory illness. Docket Entry ("DE") 1, ¶ 22. Although whooping cough is generally mild in adults, it can result in serious illness in newborns and infants. *Id.*, ¶ 22. GSK is engaged in the manufacturing,

1

marketing, and distribution of an acellular pertussis vaccine for the whooping cough called Boostrix. *Id.*, ¶¶ 2, 16, 18, 20. The complaint alleges that those who receive Boostrix are more likely to transmit whooping cough because although the vaccine reduces symptoms it does not prevent transmission. *Id.*, ¶ 3. As a result of a marketing campaign which allegedly misled consumers into believing Boostrix prevents transmission, plaintiff and millions of others increased their risk of unknowingly transmitting the whooping cough. *Id.*, ¶ 11.

In or around May 2017, Lori DeCostanzo watched GSK's "Big Bad Cough" advertisement for Boostrix on television. *Id.*, ¶ 37. GSK launched the "Big Bad Cough" ad campaign in April of 2015. *Id.*, ¶ 26. The advertisement, seen below, depicts a grandparent visiting their newborn grandchild, only to turn into a wolf upon cradling the child.



*Id.*, ¶ 8.

A voiceover during the commercial warns of the dangers of the whooping cough and urges viewers to "understand the danger your new grandchild faces, talk to your doctor or pharmacist about you and your family getting a whooping cough vaccination today." *Id.*, ¶ 9. DeCostanzo also visited GSK's "Big Bad Cough" website, which depicted grandmotherly wolves holding newborns while

2

warning consumers that the whooping cough can "affect people of all ages" and "be dangerous for you and your family." *Id.*, ¶¶ 6, 37.



*Id.*, ¶ 6.

The "Fight Back" page of the website told consumers that babies are most at risk for severe illness and advised that "you should receive a booster at least 2 weeks before having close contact with an infant." *Id.*, ¶ 35. Believing that GSK's vaccine could help protect her granddaughter from the whooping cough, on May 22, 2017, DeCostanzo went to her local pharmacy and received an injection of Boostrix. *Id.*, ¶ 38. At a hearing in a related action, plaintiff's counsel admitted

3

DeCostanzo did not pay for the vaccine, as it was covered by her insurance with no co-pay.[1] *See* 20-cv-2284, DE 30 at 17. Subsequently, DeCostanzo learned that GSK's advertising campaign was misleading because although the vaccine may prevent the recipient from developing symptoms, it does not prevent asymptomatic infection and silent transmission of whooping cough. *Id.*, ¶ 39.

The complaint alleges that DeCostanzo and the class members have been injured by, *inter alia*:

> physical and emotional injury, the injection creating in their bodies a defective immunity to pertussis that will last the remainder of their lives, receiving a painful injection of various substances into their bodies that they would not have received otherwise, expending time and resources to seek out and obtain Boostrix, paying, directly or indirectly, in whole or in part, for Boostrix, and after GSK led them to fear that without Boostrix they were in danger of spreading pertussis, receiving the product has actually rendered them more likely to spread pertussis and hence only increased the fear created by GSK.

*Id.*, ¶ 97.

Plaintiff alleges GSK knew their vaccine did not prevent the transmission of whooping cough. A 2014 study on baboons found that acellular pertussis vaccines such as Boostrix "do not prevent . . . infection by transmission." *Id.*, ¶ 45. Another study from 2018 stated that Boostrix does not "prevent asymptomatic infection and silent transmission." *Id.* In June 2018, sixteen scientists and professors – many of whom served as advisors, consultants, public speakers, and/or advisory board members to GSK – participated in a "Consensus Conference" on the whooping cough and published a peer reviewed article which concluded that vaccines such as Boostrix "cannot avoid infection and transmission." *Id.*, ¶ 5. In addition, studies by the FDA in 2013 demonstrated that products such as Boostrix leave people susceptible to becoming infected and

---

[1] "Facts admitted by a party are judicial admissions that bind that party throughout the litigation." *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) (cleaned up) (quoting *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006)).

transmitting whooping cough silently. *Id.*, ¶ 91. The FDA issued a press release stating those who receive acellular pertussis vaccines "may still become infected with the bacteria without always getting sick and are able to spread infection to others, including young infants who are susceptible to pertussis disease." *Id.*

*Procedural History*

On May 20, 2020, DeCostanzo commenced the initial version of this action against GSK regarding Boostrix. 20-cv-2284, DE 1. On December 2, 2020, DeCostanzo voluntarily dismissed her claim in order to exhaust her administrative remedies for certain types of claims which may first need to be raised in a special proceeding in the United States Court of Federal Claims (the "Vaccine Court"). 20-cv-2284, DE 34; 21-CV-4869, DE 1, ¶ 65. That same day, DeCostanzo filed her claim in Vaccine Court, DE 1, ¶ 66, and the following day the Vaccine Court issued an order directing plaintiff to submit medical records and certain other documents. US Court of Federal Claims Docket Sheet 20-vv-1733, DE 21-2. The plaintiff requested four two-month extensions to submit the documents, all of which were granted. *Id.* On July 30, 2021, the Chief Special Master issued an order stating plaintiff may request to withdraw her petition because the statutory 240-day time period for the special master to issue a decision had expired. DE 22-2. On August 29, 2021, plaintiff timely filed a notice of intent to withdraw, which was granted later that same week. DE 21-3. As the Vaccine Court's order explained, "Because a decision had not been issued within the time specified in Vaccine Rule 10(b), a notice issued advising that 'that the petitioner may withdraw the petition under section 300aa—21(b) of this title or the petitioner may choose under section 300aa—21(b) of this title to have the petition remain before the special master.'" *Id.* (citing 42 U.S.C. § 300aa—12(g)). Accordingly, the Vaccine Court granted plaintiff's request to withdraw and notified the Clerk of Court that proceedings "on the merits"

5

have concluded but no judgment on the merits should be entered. *Id.*

On the same day that plaintiff withdrew her claim in Vaccine Court, she filed the instant action against GSK asserting the same claims raised in the initial version of her complaint. *See* DE 1. Defendants move to dismiss. DE 21.

This opinion now follows.

*Standard of Review*

Motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB), 2017 WL 9485714, at *3–4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein. The gravamen of that standard is whether, assuming the allegations of the complaint to be true, the complaint sets forth factual material to render the claims plausible.

*Discussion*

    a. <u>Exhaustion of Administrative Remedies</u>

The National Childhood Vaccine Injury Act of 1986 ("NCVIA") created a no-fault compensation program for vaccine-related injuries in order to "stabilize the vaccine market" and facilitate compensation "with greater ease than the civil tort system." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228 (2011) (citations omitted). Under the NCVIA, "A person injured by a vaccine, or his legal guardian, may file a petition for compensation in the United States Court of Federal Claims, naming the Secretary of Health and Human Services as the respondent." *Id.* Section 300aa–11(a)(2) requires exhaustion of administrative remedies in Vaccine Court before a petitioner can bring a claim in federal court:

> (A) No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer

> in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa–16 of this title, for compensation under the Program for such injury or death and—
>
>> (i)
>>> (I) the United States Court of Federal Claims has issued a judgment under section 300aa–12 of this title on such petition, and
>>>
>>> (II) such person elects under section 300aa–21(a) of this title to file such an action, or
>>
>> (ii) such person elects to withdraw such petition under section 300aa–21(b) of this title or such petition is considered withdrawn under such section.
>
> (B) If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action.
>
> 42 U.S. Code § 300aa–11(a)(2).

Under subsection (c) "Petition Content," a petition must contain supporting documentation evidencing, *inter alia*, (1) the petitioner received an eligible vaccine and sustained an illness, disability, injury, condition or died, (2) the petitioner's vaccination records, and (3) an identification of any unavailable records and the reasons for their unavailability. 42 U.S. Code § 300aa–11(c).

Under Section 300aa–21(b), a petitioner may "submit . . . a notice in writing choosing . . . to withdraw the petition if—(1) a special master fails to make a decision on such petition within . . . 240 days," excluding certain time periods resulting from suspension or remand. 42 U.S. Code § 300aa–21(b). Furthermore, the Special Master must notify the petitioners that they may withdraw their petition if the Vaccine Court fails to render a decision within 240 days. 42 U.S. Code § 300aa–12(g). If a petitioner loses in Vaccine Court, they may reject the verdict and file a civil action against the vaccine manufacturer in federal or state court. 42 U.S. Code § 300aa–

7

21(a).

Plaintiff first argues that the NCVIA's exhaustion requirement does not apply to her claims. Plaintiff reasons that claims for deceptive practices and false advertising under GBL §§ 349, 350 fall outside the purview of NCVIA's exhaustion requirement because they do not involve a "vaccine-related injury" under 42 U.S. Code § 300aa–11(a)(2). *See Cook v. Children's Med. Grp., P.A.*, 756 So. 2d 734, 741 (Miss. 1999) (holding that intentional fraudulent misrepresentation claims are not subject to the Vaccine Act's exhaustion requirement). Nonetheless, in order to satisfy the injury element of GBL §§ 349, 350, *see infra*, plaintiff alleges she suffered a physical injury in the form of defective immunity, among others. DE 1, ¶ 97. Because plaintiff's claims arise out of a vaccine-related injury, it appears her claims are subject to the NCVIA's exhaustion requirement. *See Laughter v. Aventis Pasteur, Inc.*, 291 F. Supp. 2d 406, 411 (M.D.N.C. 2003) (dismissing vaccine-related claims of negligence, failure to warn, misrepresentation, breach of warranties, etc. because of failure to exhaust administrative remedies); *Doe v. Merck & Co. Inc.*, No. 16-CV-04005(FB)(RLM), 2019 WL 1298270, at *2 (E.D.N.Y. Mar. 21, 2019), *aff'd*, 803 F. App'x 559 (2d Cir. 2020) (dismissing unexhausted claim for autism allegedly caused by vaccine).[2]

Defendants argue that plaintiff failed to satisfy the exhaustion requirement because she never filed a satisfactory petition as defined by the statute. Instead of submitting the required medical records, plaintiff performed an "end run" around the exhaustion requirement by requesting multiple extensions of time until the statutory 240-day time period elapsed and she was able to withdraw her petition. *See* DE 21 at 4–8. Defendants' argument runs contrary to the plain

---

[2] The other cases cited by plaintiff support the related but distinct proposition that the exhaustion requirement does not apply to parents whose claims arise out of a vaccine administered to their child. *See Moss v. Merck & Co.*, 381 F.3d 501, 505 (5th Cir. 2004); *Holmes v. Merck & Co.*, No. 2:04-CV-00608(BES)(GWF), 2007 WL 9728627, at *2 (D. Nev. Nov. 1, 2007); *McDonald v. Lederle Lab'ys*, 341 N.J. Super. 369, 380 (App. Div. 2001). The reason is the NCVIA's exhaustion requirement only applies to those who received the vaccine. *Moss*, 381 F.3d at 505.

8

language of the statute. The NCVIA's exhaustion requirement is satisfied when a "person elects to withdraw such petition," 42 U.S. Code § 300aa–11(a)(2)(A)(ii), and a person may request to withdraw a petition if the "special master fails to make a decision on such petition within . . . 240 days," 42 U.S. Code § 300aa–21(b). Although the NCVIA specifies what must be submitted with a petition, Section 300aa–21(b)'s withdrawal procedure does not state that a petition must contain supporting medical documentation before it can be withdrawn.

The Vaccine Court has already rejected the argument that a petitioner should not be allowed to withdraw a petition without "the relevant medical records, [because] then, 240 days later, [they can] withdraw from the Program and thereafter file a tort suit." *Stewart ex rel. Stewart v. Sec'y of Health & Hum. Servs.*, No. 02-819V, 2003 WL 22300298, at *11 (Fed. Cl. Sept. 3, 2003). Permitting a plaintiff to exhaust their administrative remedies by withdrawing a petition lacking medical records after 240 days does not subvert the purpose and structure of the NCVIA. "Congress designed a system in which a claimant in fact may, if he so chooses, enter and exit the Program without having made a true effort to prove that his injury was vaccine-caused." *Id.* at *13. Rather, "[a] claimant may, if he desires, merely treat the Program as a 240–day delay before filing a tort suit, without giving the assigned special master a true opportunity to evaluate the merits of the claim." *Id.* "Congress did not make the Program the exclusive remedy for vaccine-related injuries." *Id.* Indeed, a petitioner who loses in Vaccine Court may reject the verdict and then file a new action in federal court. 42 U.S. Code § 300aa–21(a). For these reasons, a petitioner's right to withdraw a petition and file an action in federal court if the Vaccine Court does not render a decision within 240 days is not a "loophole" of the NCVIA, but rather by design.

Even if the petition contained the required medical records, it likely would not have led to a different outcome because, absent expert testimony, the Vaccine Court realistically could not

9

have decided the case on the merits. *Id.* at *14. And, even if all the necessary medical evidence were available, due to current caseloads it is "very rare" for the Vaccine Court to decide a case within 240 days. *Thomas v. Secretary of HHS*, No. 20-886V, 2021 U.S. Claims LEXIS 1103, at *7 (Fed. Cl. May 17, 2021). Thus, requiring plaintiff to resubmit her petition in Vaccine Court with the necessary medical documentation would be futile because in all likelihood she would have withdrawn her petition after 240 days regardless.

The litany of cases cited by defendants are distinguishable because they all involve statutory schemes that do not permit exhaustion of statutory remedies through withdrawal. *See Williams v. Comstock*, 425 F.3d 175, 176 (2d Cir. 2005) (42 U.S.C. § 1997e(a) of The Prison Litigation Reform Act); *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-CV-6964 (NSR), 2019 WL 4600870, at *9 (S.D.N.Y. Sept. 21, 2019) (20 U.S.C. § 1415(i)(2)(A) of the Individuals with Disabilities Education Act); *Hoffman v. N. Westchester Hosp.*, 125 F.3d 844 (2d Cir. 1997) (exhaustion of state administrative procedures through the Public Health Council of the New York State Department of Health). In contrast, here the Vaccine Court issued a decision granting petitioner's request to withdraw her petition and finding that the proceedings "on the merits" are now concluded. DE 22-3.

For the foregoing reasons, the Court finds that, assuming the NCVIA's exhaustion of administrative remedies requirement applies, DeCostanzo has satisfied it.

b. <u>Primary Jurisdiction</u>

"Recourse to the doctrine of primary jurisdiction is . . . appropriate 'whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Ellis v. Trib. Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (quoting *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956)). "No fixed

10

formula exists for applying the doctrine of primary jurisdiction." *Id.* at 82 (citation omitted). "While '[a]nalysis is on a case-by-case basis,'" courts have generally focused on four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82–83 (citations omitted).

Defendants argue plaintiff's claims should be dismissed under the primary jurisdiction doctrine because the FDA found Boostrix "safe and effective" when approving the vaccine and the CDC recommends adults get a Tdap vaccine,[3] especially if they are around infants. DE 21 at 9–10. Consideration of the four aforementioned factors weighs against application of the primary jurisdiction doctrine. First, the question at hand – whether GSK's "Big Bad Cough" campaign is a deceptive practice or false advertising – is well within the conventional experience of judges and only indirectly involves technical matters regarding vaccine efficacy which are within the ambit of the agency's expertise. *See Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065, at *7 (E.D.N.Y. Sept. 27, 2013) (the claim that defendant "has marketed its products in a manner that misleads consumers into believing that the products support brain development and function when the scientific evidence says otherwise is one courts are well-equipped to handle, and thus those claims are not an appropriate basis for invoking the primary jurisdiction doctrine"). Whether federal agencies still recommend the whooping cough vaccine as a means of protecting infants is irrelevant: "the primary jurisdiction doctrine 'is not designed to secure expert advice from agencies

---

[3] A Tdap vaccine protects against tetanus, diphtheria and pertussis.

11

every time a court is presented with an issue conceivably within the agency's ambit[.]'" *Id.* (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Second, the question at issue is not within the agency's discretion because plaintiff's claims turn on GSK's marketing of Boostrix, not the FDA or CDC's licensing or promotion of the vaccine. Third, there is not a substantial danger of inconsistent rulings since the FDA has already found that acellular pertussis vaccines such as Boostrix do not prevent transmission. *See* DE 1, ¶ 91. Finally, there is no pending application before the FDA or CDC regarding Boostrix.

      The cases cited by defendants are readily distinguishable. In *Doe v. Merck & Co. Inc.*, the doctrine of primary jurisdiction applied because the plaintiffs sought an injunction revoking Merck's FDA license to distribute a vaccine, a matter which falls squarely within the FDA's authority and for which the FDA provides administrative procedures. No. 16-CV-04005(FB)(RLM), 2019 WL 1298270, at *3 (E.D.N.Y. Mar. 21, 2019), *aff'd*, 803 F. App'x 559 (2d Cir. 2020) (affirming dismissal under primary jurisdiction doctrine because "licensing is within the agency's discretion"). Here, plaintiff challenges GSK's marketing of Boostrix – not the FDA's licensing of it. Similarly, *Ellis v. Trib. Television Co.* also involved a direct challenge to a licensing matter. 443 F.3d 71, 73 (2d Cir. 2006) (holding that the Federal Communications Commission should have first ruled on a media outlet's request for a waiver of the newspaper/broadcast cross-ownership rule). In *Gisvold v. Merck & Co.*, the primary jurisdiction doctrine applied because a prior application to the agency had been made regarding plaintiff's claim that defendants misled consumers into believing sunscreen products labeled above SPF 50 had superior effectiveness. 62 F. Supp. 3d 1198, 1204 (S.D. Cal. 2014). Here, there is no relevant proceeding before the agency. Finally, *Premo Pharm. Lab'ys, Inc. v. United States* does not support defendants' position; it held that "the FDA's jurisdiction is *not* exclusive" and "a court *may* exercise its concurrent jurisdiction

to adjudicate the 'new drug' status of a product," but that the district court erred in assuming the task of deciding whether the drug was safe and effective instead of determining whether the drug was generally recognized as such. 629 F.2d 795, 801 (2d Cir. 1980) (emphasis added).

The primary jurisdiction cases regarding public utilities cited by defendants also fail to support their position. In *Carroll Elec. Coop. Corp. v. Sw. Bell Tel. Co., Inc.*, the Court abstained from granting injunctive relief because it "would interfere with the [Arkansas Public Services Commission's] attempt to create a uniform and coherent policy [regarding pole attachments]," but the Court did not dismiss for lack of jurisdiction under the primary jurisdiction doctrine. No. 3:16-CV-3034, 2016 WL 4926435, at *7, *9 (W.D. Ark. Sept. 14, 2016). In *Youngja Huh v. Suez Water Westchester Inc.*, the court applied the primary jurisdiction doctrine because the plaintiffs challenged the tabulation of a water bill, a "claim [that] falls well within the [New York Public Service Commission's] wheelhouse." No. 16 CIV. 3240 (PAE), 2017 WL 1857252, at *4–5 (S.D.N.Y. May 5, 2017). In the Court's view, plaintiff's case is more akin to misleading labeling claims regarding dietary supplements, where "the doctrine is rarely applied . . .." *See Jasper v. MusclePharm Corp.*, No. 14-CV-02881-CMA-MJW, 2015 WL 2375945, at *4 (D. Colo. May 15, 2015) (collecting cases).

For the foregoing reasons, the primary jurisdiction doctrine is inapplicable to plaintiff's suit.

c. <u>Cognizable Injury: GBL §§ 349, 350 and Fraud Claims</u>

To assert a claim under GBL §§ 349, 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940

13

(2012)). "Section 349 governs consumer-oriented conduct and, on its face, applies to virtually all economic activity." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999) (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 43 (1995)). "Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim." *Id.* "However, proof that 'a material deceptive act or practice *caused actual, although not necessarily pecuniary, harm*' is required to impose compensatory damages." *Id.* at 55–56. Common law fraud also requires an injury. *Id.* at 47. In addition to satisfying the injury prong of GBL §§ 349, 350, plaintiff must establish that she has an injury for the purposes of Article III standing. *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *10 (S.D.N.Y. Aug. 22, 2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (the alleged injury must bear a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts").

Plaintiff argues that she suffered an injury because the vaccine created "a defective immunity to pertussis that will last the remainder of [her] li[fe]," she received a "painful injection of various substances" she would not have otherwise received, she "expend[ed] time and resources to seek out and obtain Boostrix, paying, directly or indirectly, in whole or in part, for Boostrix," and she has suffered the emotional injury of fearing she will spread the whooping cough because "the product has actually rendered [her] more likely to spread pertussis." DE 1, ¶ 97. Defendants argue that plaintiff cannot establish the requisite injury because she did not pay for Boostrix, her fear of spreading whooping cough is overly speculative, and the alleged deception itself cannot be the harm.

Plaintiff suffered an injury because she was administered a painful vaccine shot in the arm which she would not have received but for GSK's allegedly misleading ad campaign. *See Boateng*

*v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-00209(KAM)(SIL), 2022 WL 4357555, at *27 (E.D.N.Y. Sept. 20, 2022) (injury to thumb from self-closing door is a cognizable injury under GBL § 349). The physical injury also satisfies Article III standing because a vaccine shot is analogous to the common-law tort of battery. *See TransUnion*, 141 S. Ct. at 2204 ("certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms . . ..").

Defendants are correct that plaintiff cannot make a showing of pecuniary harm in the form of a price premium because she did not pay for Boostrix as it was covered by insurance. *See* 20-cv-2284, DE 30 at 17. Defendants are also correct that the deception itself cannot satisfy the injury prong in a GBL §§ 349, 350 or common law fraud claim. *See Small*, 94 N.Y.2d at 56 (rejecting plaintiffs' theory of the case that "set[] forth deception as both act and injury"); *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (3rd App. Div. 2007) (finding no cognizable injury where plaintiff alleged "she would not have purchased the drug absent defendant's deceptive practices"). Although in *Small* the Court of Appeals found that the plaintiffs, a class of smokers, did not suffer a cognizable injury under GBL §§ 349, 350, that was only because the "plaintiffs abandoned the addiction component of the legal theory of their cases, [and] therefore fail[ed] to demonstrate that they were 'actually harmed[.]'" 94 N.Y.2d at 56. Defendants argue that the risk of potentially transmitting the whooping cough to others cannot satisfy the injury requirement because it is a future, speculative injury. *See e.g.*, *Baron*, 42 A.D.3d at 629 (rejecting "claim that any off-label prescription of Neurontin was potentially dangerous [because it] asserts a harm that is merely speculative"); *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 311 (S.D.N.Y. 2021) (elevated risk of cancer from a weight-loss drug is not a cognizable injury where plaintiff did not allege they suffered from cancer or other health problems as a result of the drug). Here, however, the plaintiff

15

does not allege that her injury is the possibility of one day transmitting the whooping cough to others. Rather, she alleges that her injury is the defective immunity which *currently* renders her vulnerable to asymptomatic infection. DE 1, ¶ 97. Just as addiction to cigarettes is a cognizable injury, *see Small*, 94 N.Y.2d at 56, defective immunity is a cognizable injury because it is a biologically disadvantageous condition.

For these reasons, the Court finds that plaintiff suffered a cognizable injury under GBL §§ 349, 350 and common law fraud. For those same reasons, plaintiff also alleges a cognizable injury for her negligent misrepresentation, unjust enrichment, and express and implied warranty claims, which are discussed further below.

d. <u>Remaining Claims</u>

"To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). Defendants argue that plaintiff's express warranty claim fails because GSK did not make an affirmative misrepresentation regarding Boostrix and never mentioned the vaccine by name. *See Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 432 (S.D.N.Y. 2011) ("failure to allege any specific words, promises or statements . . . that would create an express warranty is fatal to the claim"). However, it is blackletter law that an affirmation need not be made with words. *See* N.Y. U.C.C. 2-313 cmt. 5 ("A description need not be by words"); *see, e.g.*, *Tirino v. Kenner Prod. Co.*, 72 Misc. 2d 1094, 1095 (Queens Civ. Ct. 1973) ("The assertion that the product was 'Non-Toxic', taken together with illustration showing a boy with Glo-Juice between his eyelids and eyebrows is sufficient to support a finding

16

by the jury that there was an express warranty that the product could be safely used in this manner"). Here, the commercial features an image of a wolf cradling a baby while warning viewers to "understand the danger your new grandchild faces" and " talk to your doctor . . . about . . . getting a whooping cough vaccination today." DE 1, ¶ 9. Moreover, the GSK's "Big Bad Cough" website explicitly told consumers they "should receive a booster at least 2 weeks before having close contact with an infant." *Id.*, ¶ 35. Together and individually, the commercial's imagery, voiceover, and website form an express statement that viewers should receive the whooping cough vaccine in order to protect infants. That GSK's ad campaign did not reference their vaccine by the name Boostrix is of no consequence since the "Big Bad Cough" website clearly indicates GSK is the manufacturer. *Id.*, ¶ 6.

"To establish that a product is defective for the purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 314 (S.D.N.Y. 2021) (quoting *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 783 N.Y.S.2d 698, 701 (3rd App. Div. 2004)). "The law is clear that, absent any privity of contract between Plaintiff and Defendant, a breach of implied warranty claim cannot be sustained as a matter of law except to recover for personal injuries." *Id.* (quoting *Gould v. Helen of Troy Ltd.*, 16-CV-02033, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017)). GSK argues that plaintiff's implied warranty of merchantability claim should be dismissed because plaintiff was not in privity with them. However, because plaintiff alleges Boostrix caused her a physical injury, the privity requirement is inapplicable. Because plaintiff's express and implied warranty claims survive the motion to dismiss stage, so too does her Magnuson-Moss Warranty Act claim. *See Cali v. Chrysler*

17

*Grp. LLC*, No. 10 Civ. 7606 (JSR), 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011), *aff'd,* 426 F. App'x 38 (2d Cir. 2011) ("[C]laims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law").

"To state a claim for negligent misrepresentation under New York law a plaintiff must allege that . . . the defendant had a duty, as a result of a special relationship, to give correct information." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *23 (E.D.N.Y. Sept. 22, 2015) (citation omitted). "Under the duty element, New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Id.* at *24 (citations and internal quotation marks omitted). Although it is true that "courts have consistently held that advertisements alone are not sufficient" to establish the requisite special relationship," those cases generally do not involve medical advertising. *See id.* at *25 (collecting cases regarding credit ratings, the auto industry, and legal education). Due to medical nature of the ad campaign and GSK's status as a major pharmaceutical company, the Court finds that, at the motion to dismiss stage, plaintiff has made sufficient factual allegations such that it is plausible GSK held a duty to plaintiff and other consumers as a result of a "special relationship." *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013) (finding a plausible "special relationship" where defendants' marketing materials held themselves out as having expertise in vitamin supplements). Additionally, the economic loss doctrine does not bar plaintiff's negligent misrepresentation claim because she has alleged a personal injury. *See Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 CIV.2628(RWS), 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004).

Lastly, the unjust enrichment claim is dismissed as duplicative of plaintiff's other claims because it "simply restates elements of other claims." *Goldemberg*, 8 F. Supp. 3d at 484. *See* DE

18

1, ¶ 188 (restating under unjust enrichment claim that "GSK's conduct violated federal and state consumer protection statutes"). Moreover, the Court "cannot conceive of any set of facts upon which [plaintiff] would fail to establish [her] breach of warranty and statutory claims, but nonetheless succeed in proving unjust enrichment." *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *12 (E.D.N.Y. Sept. 14, 2015).

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss is DENIED except with respect to the unjust enrichment claim, which is dismissed as duplicative.

**SO ORDERED.**

Dated:

    Central Islip, New York          s/ Gary R. Brown
    November 29, 2022              GARY R. BROWN
                                          United States District Judge