**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Lori DeCostanzo, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>        -v-<br><br>GlaxoSmithKline plc and GlaxoSmithKline LLC,<br><br>                    Defendants. | 2:21-cv-4869<br>(NJC) (AYS) |

**ORDER GRANTING PRELIMINARY APPROVAL TO CLASS ACTION SETTLEMENT, PROVISIONALLY CERTIFYING SETTLEMENT CLASS, DIRECTING NOTICE TO THE SETTLEMENT CLASS, AND SCHEDULING FINAL APPROVAL HEARING**

Upon consideration of Plaintiff Lori DeCostanzo's unopposed motion for preliminary approval (ECF No. 61), and the entire record herein, and having reviewed the submissions of Counsel, the Court grants preliminary approval to the Parties' Settlement Agreement upon the terms and conditions set forth in this Preliminary Approval Order. The Court hereby adopts and incorporates the terms of the proposed Settlement Agreement for the purposes of this Preliminary Approval Order, including the Definitions set forth in the proposed Settlement Agreement. The Court now orders as follows:

**FINDINGS OF FACT**

1. **Underlying Facts**.

   a. On August 29, 2021, Plaintiff filed a Class Action Complaint against GlaxoSmithKline plc (now known as GSK plc) and GlaxoSmithKline LLC ("GSK LLC" and, together with GSK plc, "GSK") based on an alleged deceptive and misleading advertising campaign (the "Advertising Campaign") related to

Tdap vaccines like BOOSTRIX and the transmission of pertussis to others, which ran from 2015–2020 (the "Litigation"). (ECF No. 1.)

b.  Plaintiff has asserted various claims, including claims under New York General Business Law Sections 349 and 350, on behalf of certain classes of consumers who viewed the Advertising Campaign.

c.  The Parties represent that they have conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims and defenses.

d.  Class Counsel represents that it determined the strength of the claims, the likelihood of success and significant risks of continued litigation, and the parameters within which courts have assessed settlements similar to this proposed settlement.

e.  The Parties have entered into a Settlement Agreement in which the Parties have agreed to settle the Litigation and to the dismissal of the Litigation with prejudice on the terms set forth in the proposed Settlement Agreement, subject to the approval and determination by the Court as to the fairness, reasonableness, and adequacy of the settlement.

f.  Plaintiff filed her unopposed motion for preliminary approval with the consent of GSK. (ECF No. 61.)

g.  The Court has reviewed the proposed Settlement Agreement (ECF No. 61-3), including the exhibits attached thereto, and all prior proceedings herein, and has found good cause based on the record to enter this Preliminary Approval Order.

2.  **Preliminary Settlement Approval**. During the preliminary approval stage, the court

must analyze whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Prior to its 2018 amendment, Rule 23 did not provide specific factors for courts to consider in determining whether a proposed class action settlement was "fair, reasonable, and adequate" under Rule 23(e)(2). *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* ("*Payment Card*"), 330 F.R.D. 11, 28 (E.D.N.Y. 2019)*.* At that time, courts in the Second Circuit considered both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009) (quotation marks and brackets omitted). To evaluate the procedural fairness of a proposed class action settlement, courts in this Circuit assessed whether "the settlement resulted from arm's-length negotiations, and [whether] plaintiffs' counsel possessed the necessary experience and ability, and have engaged in the discovery[] necessary to effective representation of the class's interests." *Id.* at 804 (quotation marks and brackets omitted). Courts evaluating the substantive fairness of a proposed class action settlement also considered the nine factors in *City of Detroit v. Grinnell Corporation*:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

In 2018, Congress amended Rule 23(e) to identify four "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Under Rule 23(e)(2), a court must explicitly consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In *Moses v. New York Times Company*, the Second Circuit emphasized that district courts "must consider the four factors outlined in Rule 23(e)(2) holistically" in addition to the *Grinnell* factors when evaluating a proposed class action settlement. 79 F.4th 235, 243 (2d Cir. 2023). It clarified that:

> [T]he revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement. But the rule now mandates courts to evaluate factors that may not have been highlighted in our prior case law, and its terms prevail over any prior analysis that are inconsistent with its requirements.

*Id*. The Second Circuit also held that courts may no longer presume a settlement to be substantively fair where it arose from an arm's-length bargaining process. *Id. Moses* thus confirmed that courts must consider *both* the Rule 23(e) factors and the *Grinnell* factors—to the

extent that they differ—in determining whether to approve the proposed settlement of class action claims, as district courts had done following the 2018 amendment of Rule 23(e). *See e.g.*, *Payment Card*, 330 F.R.D. at 29; *LoCurto v. AT&T Mobility Servs. LLC*, No. 13-cv-4303, 2020 WL 13859604, at *4 (S.D.N.Y. June 22, 2020).

Courts have found that Rule 23(e)(2) does not otherwise address the following *Grinnell* factors: the reaction of the class to the settlement (second factor); the stage of the proceedings and the amount of discovery completed (third factor); the ability of the defendants to withstand a greater judgment (seventh factor); the range of reasonableness of the settlement fund in light of the best possible recovery (eighth factor); and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation (ninth factor). *See, e.g.*, *Payment Card*, 330 F.R.D. at 29 n.22 (discussing the seventh, eighth and ninth *Grinnell* factors); *Amigon v. Safeway Constr. Enters. LLC*, No. 20-cv-5222, 2024 WL 5040436, at *6 (E.D.N.Y. Dec. 9, 2024) (discussing the second, third, seventh, eighth, and ninth *Grinnell* factors). Accordingly, courts continue to analyze these *Grinnell* factors in combination with the Rule 23(e)(2) factors in evaluating settlement agreements in class actions. *See, e.g.*, *id.*

The Court has closely reviewed the proposed Settlement Agreement and finds that it is within the range of possible approval as fair, reasonable, and adequate within the meaning of Rule 23(e) and the relevant *Grinnell* factors. The Settlement Agreement has key indicia of fairness, in that: (1) the Parties reached the proposed Settlement Agreement after investigating the strengths and weaknesses of the claims and defenses; (2) the Parties engaged in significant litigation before reaching the proposed Settlement Agreement; (3) Plaintiff faced significant risks in continuing with litigation, including in securing certification of the proposed class, as addressed on the record at the January 30, 2026 Preliminary Approval Hearing (Preliminary

Approval Hearing Tr. 5:14–6:4; 14:3–14); (4) the Parties engaged in extensive negotiations that were contentious, arm's-length, and assisted by professional mediator Honorable Diane M. Welsh (Ret.); (5) there is no evidence of collusion between the Parties in reaching this settlement; and (6) the Parties are experienced in similar litigation. Additionally, as addressed on the record during the Preliminary Approval Hearing, the Court makes the following additional findings.

    a. ***Release of Claims Provision***

The Court considers the release of liability in the proposed Settlement Agreement under Rule 23(e)(2)(C), Fed. R. Civ. P., because this provision "affects the determination of the fairness, reasonableness, and adequacy of class relief . . . ." *Payment Card*, 330 F.R.D. at 36; *see also Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No. 18-cv-4747, 2020 WL 9814083, at *9 (E.D.N.Y. Oct. 19, 2020).

It is "well-established . . . that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Payment Card*, 330 F.R.D. at 42 (citing *WalMart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005)). Accordingly, "[c]ourts have denied preliminary approval where releases from liability are deemed to be overly broad." *Payment Card*, 330 F.R.D. at 43.

Section F.1 of the proposed Settlement Agreement, the Release of Claims Provision, releases all claims "relating to or arising from the Advertising Campaign and/or the characteristics of BOOSTRIX that Plaintiff challenges in the Lawsuit" against GlaxoSmithKline, its affiliates, and "any sales agents and distributors, wholesalers, retailers, or any other party in the chain of distribution and retail sale of BOOSTRIX." (Settlement Agreement § F.1, ECF No.

61-3.) "Advertising Campaign" is defined as the "the GSK multimedia advertising campaign that ran between 2015 and 2020 concerning pertussis, also known as 'whooping cough,' in which each advertisement featured one or more anthropomorphic wolves, and was known, *inter alia*, as the 'Big Bad Cough' campaign." (*Id*. § A.1.a.) In response to this Court's inquiries, the Parties provided supplemental authority in support of their Release of Claims Provision, including authority from this Circuit approving class action settlements with similar provisions. *See* ECF No. 64 at 1–4; *see also, e.g.*, *Swetz v. GlaxoSmithKline Consumer Health, Inc.*, No. 20-cv-4731, 2021 WL 5449932, at *1, *4 (S.D.N.Y. Nov. 22, 2021).

The Release of Claims Provision is not "overly broad" and is sufficiently tied to the "'identical factual predicate' as the settled conduct." *Payment Card*, 330 F.R.D. at 42. It is limited to claims from a particular, five-year long "Big Bad Cough" advertising campaign by Defendants, as well as the particular characteristics of BOOSTRIX "that Plaintiff challenges in the Lawsuit"—specifically, that BOOSTRIX does not "prevent transmission of the bacteria that causes whooping cough." (Settlement Agreement § F.1; Preliminary Approval Mot., ECF No. 61-1 at 1, 23.) Accordingly, the Release of Claims Provision does not raise any concerns about the fairness, adequacy, or reasonableness of class relief.

### b. *Public Comment Provision*

The Court also reviews the proposed Settlement Agreement's non-publicity provision because it "affects the determination of the fairness, reasonableness, and adequacy of class relief." Fed. R. Civ. P. 23(e)(2)(C).

The proposed Settlement Agreement's Public Comment Provision states:

> Other than in court filings or as required by law, the Parties shall not make any public statements about the Lawsuit or Settlement Agreement that are not in the public domain, unless the Parties otherwise agree. Nothing herein shall be construed in a manner that would result in counsel needing to violate his or her duties.

(Settlement Agreement § J.16.) "Parties" is defined to mean Plaintiff Lori DeCostanzo and Defendants GlaxoSmithKline plc (now known as GSK plc) and GlaxoSmithKline LLC.  (*Id*. § A.1.aa.)

At the Preliminary Approval Hearing, the Parties confirmed that this Public Comment Provision is not binding on Settlement Class Members and does not restrict any comment from the Parties about information that is already "in the public domain," such as the allegations of the Complaint or the terms of the proposed Settlement Agreement itself. (Settlement Agreement § J.16; Preliminary Approval Hearing Tr. 32:5–33:18.) Accordingly, the Court finds that the Public Comment Provision does not run afoul of caselaw addressing similar provisions. *See, e.g., Zorn-Hill v. A2B Taxi LLC*, No. 18-cv-11165, 2020 WL 5578357, at *7 (S.D.N.Y. Sept. 17, 2020) (approving a clause that "limit[ed] [p]laintiffs' ability to speak with the media only about the [p]roposed [s]ettlement itself" but still permitted them "to contact the media about . . . their allegations" and to "respond to media inquiries with 'truthful statements about their experience litigating their case'"); *Choc v. Corp. #1*, No. 23-cv-3886, 2023 WL 8618746, at *5 (S.D.N.Y. Dec. 12, 2023) (finding a clause overly broad where it prohibited parties from communicating with the media "regarding 'this Agreement' or 'this Lawsuit in general[]'" as such language would preclude plaintiff "from publicizing even the existence of the settlement or truthful information about this action and his . . . claims"). Accordingly, the Release of Claims Provision does not raise any concerns about the fairness, adequacy, or reasonableness of class relief.

      c.  ***Attorneys' Fees***

The 2018 amendments to Rule 23(e) include the requirement to examine the adequacy of class relief by "taking into account . . . the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The traditional *Grinnell* factors

had not previously included such a requirement. *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 118 (2d Cir. 2025). "[W]hen reviewing the substantive fairness of a proposed settlement, the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement in tandem." *Moses*, 79 F.4th at 244 (quotation marks omitted). The purpose of this analysis is to "provide[] a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check." *Id.* (quoting *Fresno County Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019)); *see also Kurtz*, 142 F.4th at 118 ("One of the major risks of class action settlements is that class counsel may undervalue the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly.").

In its 2025 decision in *Kurtz v. Kimberly-Clark Corporation*, the Second Circuit held that "this tandem analysis of class relief and attorney's fees requires courts to *compare the proportion of total recovery allocated to the class to the proportion of total recovery allocated to class counsel.*" 142 F.4th at 115 (emphasis added). It explained, as follows, that the Rule 23(e) inquiry serves a different purpose than the Rule 23(h) requirement to assess the reasonableness of requested attorneys' fees for class counsel:

> Certainly, both rules ask courts to weigh class recovery against attorney's fees. But the focus of each inquiry is different. Whereas Rule 23(h) asks whether fees are reasonably calculated and genuinely earned—using class recovery as a measuring stick for *attorney success*—Rule 23(e) safeguards the fairness of a settlement for the class by posing a comparative inquiry: does the proportion of the total recovery allocated to attorney's fees compared to the proportion of the total recovery allocated to the class raise any questions about the *adequacy of class relief*? The two examinations may overlap, but Rule 23(e) requires its own separate analysis of fees in relation to class relief, regardless of how the court conducts its Rule 23(h) inquiry.

> Because the district court did not consider the allocation of recovery between class counsel and the class in assessing settlement fairness, as required by Rule 23(e), we vacate and remand for the district court to conduct this analysis in the first instance.

*Kurtz*, 142 F.4th at 121 (emphasis in original). To satisfy Rule 23(e), the district court must therefore "**compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and . . . consider whether that comparison reveals *a sufficient imbalance* as to cast doubt on the settlement's fairness**." *Id*. at 119 (emphasis added). Moreover, the Second Circuit clarified in *Kurtz* that "class recovery and the agreement on attorneys' fees should be viewed as a package deal *even when the two are structurally segregated*." *Id*. at 120 (emphasis added) (internal quotation marks omitted). "Although a defendant's separate funds for attorney's fees and class recovery may be a relevant consideration in assessing a settlement's fairness, it is not a replacement for the proportionality analysis required by Rule 23(e)(2)(C)(iii)." *Id*.

In analyzing whether a comparison of the proportion of the total recovery going to the class as opposed to class counsel calls into question the fairness of a proposed class settlement, the district court may need to determine the "appropriate benchmark" for the proportionality analysis. *Id*. at 119. The Second Circuit has found that this is a "fact-bound question that is best left to the district court's discretion." *Id*. It further explained:

> Different settlement structures, different rates of actual recovery by the class, and different treatments of unclaimed funds all might lead a district court to conclude that comparison to the actual, to the hypothetical, or to some predicted class recovery is most suitable. For example, at one extreme, unduly complicated claim procedures combined with abysmal claim rates would weigh in favor of using actual class recovery as the comparator. On the other hand, if a settlement is structured so that unclaimed funds did not revert to the defendant, then it might make more sense to compare fees to the hypothetical maximum class recovery, even if class members do not in fact recover much of the money. So long as the proportion of the total recovery that goes to attorney's fees is compared to the proportion of 'relief provided for the class,' whether that be the actual, hypothetical, or predicted class recovery, Rule 23(e)(2)(C)(iii) is satisfied.

*Id* at 119–20.

Since the Second Circuit decided *Kurtz* around seven months ago, it has not provided additional guidance regarding the permissible allocation of recovery between the class and class counsel under Rule 23(e). *See, e.g.*, *Hasemann v. Gerber Products Co.*, No. 15-cv-2995, 2025 WL 2773748, at *4 (E.D.N.Y. Sept. 29, 2025).

Under the terms of the proposed Settlement Agreement, "Class Counsel will file a Motion for Approval of Attorneys' Fees, Costs, and Service Awards to be paid by GSK LLC," and Class Counsel shall seek fees in an amount "not to exceed one million, nine hundred and fifty thousand dollars ($1,950,000) in full satisfaction of their claim for costs and attorneys' fees." (Settlement Agreement § G.1.a.) The proposed Settlement Agreement further provides that Class Counsel's final approval motion shall request that this Court determine what fees to award Class Counsel so that any litigation relating to fees "will not operate to terminate or cancel this Settlement Agreement, or affect and delay the Effective Date." (*Id*. § G.1.d.)

As stated during the Preliminary Approval Hearing, the Court is unable at this stage of the proceedings to "compare the proportion of the total recovery going to attorney's fees with the proportion going to the class," or to "consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.4th at 119; *see also* Preliminary Approval Hearing Tr. 21:1–24:7.

The Settlement Agreement is a "non-capped claims-made settlement." (Preliminary Approval Mot. at 14.) At this point, where claims have yet to be submitted, the total monetary relief that will be awarded to the class has yet to be determined. The size of the class is estimated to be "between 150,000 and 250,000." (*Id*. at 18.) As established at the Preliminary Approval Hearing, the Parties are uncertain about the anticipated number of claims that Settlement Class Members will submit to receive either the $10 or $50 payment afforded under the terms of the

proposed Settlement Agreement. (Preliminary Approval Hearing Tr. 18:24–19:23.) While the Settlement Administrator states that it could receive between "25,000 [to] 150,000 valid claim submissions," these figures are based on an estimated class size of over 13 million people. (ECF No. 64 at 10.) These different figures, the Parties acknowledge, are "widely varying estimates." (*Id*.)

The Parties rely on three examples of approved, uncapped settlements in arguing for preliminary approval in light of the proposed award of attorneys' fees here. However, as set forth in a January 12, 2026 Order, two of those settlements—*In re: Beyond Meat Inc. Protein Content Marketing and Sales Practices Litigation*, No. 1:23-cv-00669 (N.D. Ill.), and *Cleveland v. Whirlpool Corp.*, No. 20-cv-1906 (D. Minn.)—are distinguishable from the proposed settlement here because they provided an estimate of attorneys' fees as a percentage of the total settlement value, even at the preliminary approval stage. (Elec. Order, Jan. 12, 2026.) The settlement in *In re: Beyond Meat* capped attorneys' fees and costs "in an amount not to exceed 33 and 1/3 percent of the total Settlement," whereas the settlement in *Whirlpool* made clear that the proposed attorneys' fees, costs, and incentive award amount "represented around 7 to 9.5% of the $15.71 to $21.33 million value of the Settlement." (*See id*.) By contrast, here, neither the proposed Settlement Agreement nor the Parties' submissions provide the Court with similar estimates. Moreover, the Court could not find any information about the third settlement on which the Parties rely: *Atamian v. Olaplex Inc.,* Case No. 37-2024-00018492-CU-BT-CTL (San Diego Cnty. Ct.). (*See* Elec. Order, Jan. 12, 2026.) The Parties declined to provide any additional information about this third example. (*See* ECF No. 64.)

Accordingly, at this stage of the proceedings, the Court cannot determine the appropriate benchmark for assessing the proportion of the total recovery going to attorneys' fees with the

proportion going to the class. Moreover, the proposed Settlement Agreement does not mandate that a specific amount of fees go to Class Counsel, but only that Class Counsel may seek *up to* $1,950,000 in fees and costs with any attorneys' fee award subject to further modification and approval by this Court. (Settlement Agreement § G.1.a.) The Court must wait for the final approval stage for information about the total number of claims, the proportion of claims at the $50 versus $10 level, and the amount of attorneys' fees, costs, and expenses sought by Class Counsel—all of which will influence this Court's determination as to whether a comparison of the proportion of the total recovery going to attorneys' fees with the proportion going to the class reveals "a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.4th at 119.

Thus, the Rule 23(e) factor relating to "the terms of any proposed award of attorney's fees, including timing of payment," is at best neutral and at worst weighs slightly against preliminary approval. Fed. R. Civ. P. 23(e)(2)(C)(iii). Nevertheless, the other Rule 23(e) and relevant *Grinnell* factors that can be assessed at this stage either weigh in favor of finding that the proposed Settlement Agreement is reasonable, fair, and adequate, or at worst are neutral. Accordingly, the Court preliminarily approves the proposed Settlement Agreement.

3. **Preliminary Class Certification for Settlement Purposes Only**. The Court preliminarily finds, based on the terms of the proposed Settlement Agreement and for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact that are common to the Settlement Class, and that those questions of law and fact predominate over any questions affecting any individual Settlement Class Member; (c) Plaintiff's claims are typical of the claims of the Settlement Class Members she seeks to represent for purposes of the settlement; (d) Plaintiff and Class Counsel

have fairly and adequately represented the interests of the Settlement Class and will continue to do so; and (e) a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23. The Court also concludes that, because the Litigation is being settled rather than litigated, the Court need not consider manageability, efficiency, or judicial economy issues that might otherwise be presented by the trial of a class action involving the issues in the Litigation.

Having made these findings, the Court hereby provisionally certifies the following Settlement Class for settlement purposes only pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3):

> All adults who viewed the Advertising Campaign, and either lived in New York at the time, or were vaccinated with BOOSTRIX in New York, and were vaccinated with BOOSTRIX during the Class Period in order to protect one or more other individuals from pertussis. Specifically excluded from the Settlement Class are (i) any woman who was vaccinated with BOOSTRIX while pregnant; (ii) GSK, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which GSK has a controlling interest; (iii) judges presiding over the Litigation; (iv) counsel of record for the Parties; and (v) all Persons who validly opt-out in a timely manner.

As defined in the proposed Settlement Agreement, the term "Class Period" means the time period from May 20, 2016, through May 20, 2020. (Settlement Agreement § A.1.l.)

4. **Class Counsel and Class Representatives.** The Court appoints Michael P. Connett and Mason A. Barney of Siri & Glimstad LLP as Class Counsel. Plaintiff Lori DeCostanzo is hereby appointed as Class Representative.

5. **Jurisdiction**. The Court has subject-matter jurisdiction over the Litigation pursuant to 28 U.S.C. §§ 1332 and 1367 and personal jurisdiction over the Parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

6. **<u>Final Approval Hearing</u>**. A Final Approval Hearing shall be held on July 2, 2026 at 10:00 A.M. at the United States District Court for the Eastern District of New York, in Courtroom 1040, in the Alfonse M. D'Amato United States Courthouse, 100 Federal Plaza, Central Islip, New York 11722, with details to be provided on the Settlement Website prior to the Final Approval Hearing, to determine, among other things: (a) whether the Litigation should be finally certified as a class action for settlement purposes only pursuant to Rule 23(a) and (b)(3); (b) whether the settlement of the Litigation should be finally approved as fair, reasonable, and adequate pursuant to Rule 23(e); (c) whether the Litigation should be dismissed with prejudice pursuant to the terms of the proposed Settlement Agreement; (d) whether Settlement Class Members should be bound by the Release set forth in the proposed Settlement Agreement; (e) whether Settlement Class Members and related persons should be permanently enjoined from pursuing lawsuits based on the Released Claims, as set forth in the proposed Settlement Agreement; (f) whether the application of Class Counsel for an Attorneys' Fee, Costs, and Service Awards should be approved pursuant to Rule 23(h); and (g) whether the application of the named Plaintiff for a Service Award should be approved. The submissions of the Parties in support of final approval of the settlement shall be filed with the Court twenty-one (21) days prior to the Final Approval Hearing.

7. **<u>Administration and Appointment of the Settlement Administrator.</u>** Class Counsel & GSK LLC are hereby authorized to establish the means necessary to administer the proposed settlement and implement the Claim process, in accordance with the terms of the proposed Settlement Agreement. Angeion Group is hereby appointed by the Court as the Settlement Administrator, whose reasonable fees and costs are to be paid by GSK

LLC in accordance with the proposed Settlement Agreement. Angeion will carry out its notice and administration duties subject to the terms of its proposal, and as set forth in the Declaration of S. Weisbrot, which includes the Summary of Notice Plan, attached to Plaintiff's motion for preliminary approval. The Settlement Administrator shall perform and comply with all notice and administration duties ascribed to it in the proposed Settlement Agreement, this Preliminary Approval Order, and subsequent orders that may be entered by this Court in this case.

8. **Findings Concerning Notice.** The Court finds that the Notice Plan described in the proposed Settlement Agreement and the notice documentation attached as exhibits to the proposed Settlement Agreement: (a) will constitute the best notice practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation, the terms of the proposed settlement, and their rights under the proposed settlement, including, but not limited to, their rights to object to or exclude themselves from the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; (d) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Rule 23(c), the Due Process Clause(s) of the United States Constitution, and any other applicable laws; and (e) fairly and adequately inform Settlement Class Members that if they do not comply with the specified procedures and the deadline for objections, they will lose any opportunity to have any objection considered at the Final Approval Hearing or to otherwise contest approval of the settlement or appeal from any order or judgment entered by the Court in connection with the settlement. The Court further finds that all of

the notices are written in simple terminology, are clear and readily understandable, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

9. **Class Notice.** Having reviewed the Settlement Notice and Notice Plan and in light of the findings in the previous Paragraph, the proposed Settlement Notice and Notice Plan described in the proposed Settlement Agreement and the exhibits attached to the proposed Settlement Agreement are hereby approved:

   a. Not later than the Notice Commencement Date, the Settlement Administrator shall establish and make live the Settlement Website, which shall be an Internet website concerning the settlement utilizing the domain name "BigBadCoughSettlement.com." The Settlement Website will inform Settlement Class Members of the terms of the proposed Settlement Agreement, their rights, dates and deadlines, and related information. The Settlement Website shall include, in Portable Document Format ("PDF"), materials agreed upon by the Parties as set forth in the proposed Settlement Agreement and as further ordered by this Court.

   b. Not later than the Notice Commencement Date, the Settlement Administrator shall establish a toll-free telephone number utilizing Interactive Voice Response technology that will provide settlement-related information to Settlement Class Members as set forth in the proposed Settlement Agreement.

   c. The Settlement Administrator shall commence the Notice Plan no later than the Notice Commencement Date and timely disseminate any remaining notice, as stated in the proposed Settlement Agreement and/or the Declaration of S.

Weisbrot, which includes the Summary of Notice Plan, attached to Plaintiff's

motion for preliminary approval.

    d.  GSK LLC, through the Settlement Administrator, shall notify the appropriate

      Federal and State officials under the Class Action Fairness Act of 2005 and 28

      U.S.C. § 1715. Proof of compliance will be filed with the Motion for Final

      Approval.

10. **Funding of Settlement.** On or before the Effective Date, the Settlement Administrator(s) will communicate, in writing, to GSK and Class Counsel an approximate amount of funds needed to pay all timely Claims that the Settlement Administrator(s) has deemed valid and approved as of the Effective Date. No later than fourteen (14) days after the Effective Date, GSK will fund an account, as agreed upon by and accessible to, the Settlement Administrator(s), through which the Settlement Administrator(s) shall pay those timely, valid, and approved Claims.

11. **Requests for Exclusion from the Settlement Class.** Any Settlement Class Member who wishes to be excluded from the Settlement Class may elect to opt out of the settlement, relinquishing his or her rights to monetary compensation under the proposed Settlement Agreement. Settlement Class Members who opt out of the settlement will not release their claims that accrued during the Class Period. To validly request exclusion from the Settlement Class, a member of the Settlement Class must submit a written request to opt out to the Settlement Administrator so that it is postmarked by the Objection and Opt-Out Deadline stating that "I wish to exclude myself from the Settlement Class in the BOOSTRIX Advertising Campaign Class Action Settlement" (or substantially similar clear and unambiguous language). That written request shall contain

said Person's printed name, address, telephone number, email address, and date of birth. The request for exclusion must contain the written signature of said Person seeking to exclude himself or herself from the Settlement Class. The Settlement Administrator will provide copies of all requests for exclusion to counsel for the Parties on a weekly basis by email. Any Settlement Class Member who does not submit a valid and timely written request for exclusion shall be bound by all subsequent proceedings, orders, and judgments in this Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending, or subsequently initiates litigation, against any Released Party relating to the Released Claims. A member of the Settlement Class who opts out can, on or before the Objection and Opt-Out Deadline, withdraw their request for exclusion by submitting a written request to the Settlement Administrator stating their desire to revoke their request for exclusion along with their written signature. Any statement or submission purporting or appearing to be both an objection and an opt-out shall be treated as a request for exclusion. A member of the Settlement Class who submits a request for exclusion cannot object to the settlement. Not later than seven (7) days after the Objection and Opt-out Deadline, the Settlement Administrator shall provide to Class Counsel and Counsel for GSK a complete list of opt-outs together with copies of the opt-out requests and any other related information. Requests for exclusion cannot be made on a group or class basis.

12. **<u>Objections and Appearances.</u>** A Settlement Class Member who does not submit a written Request for Exclusion may object to the settlement pursuant to Paragraph E.2. and subparts of the proposed Settlement Agreement. A Settlement Class Member who wishes to submit an objection must deliver to the Court and the Settlement Administrator

so that it is postmarked by the Objection and Opt-Out Deadline, a detailed written objection.

    a.  That written objection shall contain (a) the Settlement Class Member's printed name, address, and telephone number; (b) evidence showing that the objector is a Settlement Class Member; (c) a detailed written statement of the objection(s) and the aspect(s) of the settlement being challenged, as well as the specific reasons, if any, for each such objection, including any evidence and legal authority that the Settlement Class Member wishes to bring to the Court's attention; (d) any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection; (e) the written wet signature of the Settlement Class Member making the objection; (f) the name and contact information for any attorney representing the Settlement Class Member; and (g) a statement on whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Final Approval Hearing.

    b.  A Settlement Class Member may object on his or her own behalf or through an attorney; however, even if represented, the Settlement Class Member must individually sign the objection and all attorneys who are involved in any way with asserting objections on behalf of the Settlement Class Member must be listed on the objection papers. Counsel for the Parties may take the deposition of any objector prior to the Final Approval Hearing in a location convenient for the objector (including by remote video deposition at the Parties' election).

    c.  The Settlement Administrator(s) shall on a weekly basis provide to counsel for the Parties via email copies of any objections received.

d.  Any objector who serves a timely written objection as described above may appear at the Final Approval Hearing, either in person at their own expense or through personal counsel hired at the objector's expense, to object to the fairness, reasonableness, or adequacy of any aspect of the settlement on the basis set forth in his or her objection. As noted above, objectors or their attorneys who intend to make an appearance at the Final Approval Hearing must state their intention to appear in the written objection delivered to the Settlement Administrator(s). An objector who did not submit a timely and valid written objection, as described above, may not present any objection at the hearing.

e.  Any Settlement Class Member who fails to comply with the provisions of Paragraph E.2 and its subparts shall waive and forfeit any and all rights that he or she may have to appear separately and/or to object to the settlement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders, and judgments in the Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending or subsequently initiates litigation against any Released Party relating to the Released Claims.

f.  The exclusive means for any challenge to this settlement shall be through the provisions of Paragraph E.2 and its subparts. Without limiting the foregoing, any challenge to the proposed Settlement Agreement, the Final Approval Order, the Final Judgment, or any Attorneys' Fees, Costs, and Service Awards Order shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

g.   An objector shall be entitled to all of the benefits of the settlement if the proposed Settlement Agreement is approved, as long as the objector complies with all requirements of this Settlement Agreement applicable to Settlement Class Members, including the timely and complete submission of a Claim Form and other requirements herein. A Settlement Class Member who objects can, any time before the Final Approval Hearing, withdraw their objection by submitting a written request to the Settlement Administrator(s) stating their desire to withdraw their objection along with their signature.

h.   If a Settlement Class Member or counsel for the Settlement Class Member who submits an objection to this settlement has objected to a class action settlement on any prior occasion, the objection shall also disclose all cases in which they have filed an objection by caption, court, and case number, and for each case, the disposition of the objection.

i.   The Parties shall be entitled to file responses to any objections to the proposed Settlement Agreement no later than twenty-one (21) days prior to the Final Approval Hearing.

13. **<u>Disclosures.</u>** The Settlement Administrator, Counsel for GSK, and Class Counsel shall promptly furnish to each other copies of any and all objections or written requests for exclusion that might come into their possession.

14. **<u>Settlement Escrow Account.</u>** The Court hereby approves the establishment of the Settlement Escrow Account. The Settlement Escrow Account shall be governed by Section 468B-1 through 468B-5 of the Treasury Regulations to maintain the Settlement Escrow Account as a "Qualified Settlement Fund," and the Parties agree to work in good

faith to maintain such status. The Court shall retain continuing jurisdiction over the Settlement Escrow Account, pursuant to Section 468B-1(c)(1) of the Treasury Regulations. The assets of the Settlement Escrow Account are to be segregated from other assets of GSK LLC, who shall be the transferor of the payments to the Settlement Escrow Account. Under the "relation back" rule provided under Section 468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that the Parties may jointly elect to treat the Settlement Escrow Account as coming into existence as a "qualified settlement fund" on the latter of the date the Settlement Escrow Account meets the requirements of this Paragraph of this Preliminary Approval Order or January 1 of the calendar year in which all of the requirements of this Paragraph of this Preliminary Approval Order are met. If such a relation-back election is made, the assets held in the Settlement Escrow Account on such date shall be treated as having been transferred to the Settlement Escrow Account on that date.

15. **Termination of Settlement.** This Preliminary Approval Order shall become null and void and shall not prejudice the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (a) the settlement is not finally approved by the Court, or does not become final and effective, pursuant to the terms of the proposed Settlement Agreement; (b) the settlement is terminated in accordance with the proposed Settlement Agreement; or (c) the settlement does not become effective as required by the terms of the proposed Settlement Agreement for any other reason. In such event, the settlement and proposed Settlement Agreement shall become null and void and be of no further force and effect, and neither the proposed Settlement Agreement nor the Court's orders relating to the settlement,

including this Preliminary Approval Order, shall be used or referred to for any purpose. The certification of the Settlement Class provided for herein will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of the appeal, class certification, or any other issue. In such event, GSK retains all rights to assert that the Litigation may not be certified as a class action, other than for settlement purposes.

16. **Stay of Proceedings**. Pending the Final Approval Hearing, the Court hereby also stays all proceedings in this case, other than those proceedings necessary to carry out or enforce the terms and conditions of the proposed Settlement Agreement. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over this action.  Moreover, pending final determination of whether the settlement should be approved, Plaintiff, all other Settlement Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence, or prosecute any action that asserts Released Claims against any Released Party in any court or tribunal, unless they file a timely and valid request for exclusion from the settlement. Such injunction shall remain in force until the Effective Date or until such time as the Parties notify the Court that the settlement has been terminated. Under the All Writs Act, the Court finds that issuance of this nationwide stay and injunction binding Settlement Class Members is necessary and appropriate in aid of the Court's jurisdiction over this action. The Court finds no bond is necessary for issuance of this injunction.

17. **Effect of Settlement Agreement and Preliminary Approval Order**. The Parties entered this settlement for the sole purpose of attempting to consummate a settlement of

the Litigation on a class-wide basis. This Settlement Agreement is made in compromise of disputed claims and shall not be construed as a presumption, concession, or admission by or against any Party of any default, liability, or wrongdoing as to any facts or claims alleged or asserted in the action, or in any action or proceedings, whether civil, criminal, or administrative, including, but not limited to, factual or legal matters relating to any effort to certify the action as a class action. Nothing in this Preliminary Approval Order or pertaining to the proposed Settlement Agreement, including any of the documents or statements generated or received pursuant to the claims administration process, shall be used as evidence in any further proceeding in this case or any other litigation or proceeding, including, but not limited to, motions or proceedings seeking treatment of the action as a class action. Because this is a class action settlement, this Settlement Agreement must receive preliminary and final approval by the Court. It is an express condition of this Settlement Agreement that the Court shall enter the Final Approval Order and Final Judgment and that the proposed Settlement Agreement reach the Effective Date. In the event that the Effective Date does not occur, this Settlement Agreement shall be terminated and only those provisions necessary to effectuate such termination and to restore fully the Parties to their respective positions before entry of this Settlement Agreement shall be given effect and enforced. In such event, the Parties shall bear their own costs and attorneys' fees in all respects, including without limitation with regard to the efforts to obtain any Court approval under this Settlement Agreement (except the reasonable costs of the Notice Plan and Settlement Administration that were incurred at the time of termination, which shall be paid by GSK LLC).

18. **Retaining Jurisdiction**. This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Settlement Class.

19. **Further Efforts.** Class Counsel and Counsel for GSK are hereby authorized to use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Preliminary Approval Order or the proposed Settlement Agreement, including making, without further approval of the Court, minor changes to the proposed Settlement Agreement, to the form or content of the Settlement Notice, or to the form or content of any other exhibits attached to the proposed Settlement Agreement, that the Parties jointly agree are reasonable or necessary, and which do not limit the rights of Settlement Class Members under the proposed Settlement Agreement.

20. **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Approval Hearing without further written notice to the Settlement Class, although any updates concerning the date, time, and/or format of the Final Approval Hearing shall be posted to the Settlement Website.

21. The Court sets the following schedule for the Final Approval Hearing and the actions that must precede it:

    a. The Settlement Administrator shall commence the notice program by **March 10, 2026** (the "Notice Commencement Date").

    b. The Settlement Administrator shall establish the Settlement Website and toll-free phone number by **March 10, 2026**.

    c. Plaintiff shall file her Motion for Attorneys' Fees, Costs, and Service Awards by **April 9, 2026**.

d.  Requests from Settlement Class Members to exclude themselves must be postmarked by **May 11, 2026**.

e.  Settlement Class Members must send any objections to the Court and Settlement Administrator postmarked **May 11, 2026**.

f.  Claim Forms from Settlement Class members must be postmarked by **June 8, 2026**.

g.  Plaintiff shall file her Motion for Final Approval by **June 11, 2026**.

h.  The Parties must file any responses to objections by **June 11, 2026**.

i.  The Settlement Administrator must file or cause to be filed, if necessary, a supplemental declaration with the Court by **June 26, 2026**.

j.  The Final Approval Hearing shall take place on **July 2, 2026 at 10:00 A.M.** at the United States District Court for the Eastern District of New York, in Courtroom 1040, in Alfonse M. D'Amato United States Courthouse, 100 Federal Plaza, Central Islip, New York 11722, or by virtual attendance at the Court's discretion, and the details of which to be provided before the Final Approval Hearing on the Settlement Website.

**SO ORDERED.**

Dated:  Central Islip, New York
        February 16, 2026

_/s/ Nusrat J. Choudhury_
NUSRAT J. CHOUDHURY
United States District Judge